UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| SAMAR KAYYAL, | Case No.: 1:17-cv-02718 |
| Plaintiff, | |
| v. | Honorable John J. Tharp, Jr. |
| ENHANCED RECOVERY COMPANY, LLC a/k/a ERC and ENHANCED RESOURCE CENTER, | Magistrate Judge Sidney I. Schenkier |
| Defendant. | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES** Plaintiff, SAMAR KAYYAL ("Plaintiff"), by and through her undersigned counsel, responding to ENHANCED RECOVERY COMPANY, LLC a/k/a ERC and ENHANCED RESOURCE CENTER'S ("ERC" or "Defendant") Motion for Summary Judgment ("ERC's Motion") as follows:

### INTRODUCTION

ERC's Motion seeks to dispose of this case in its entirety by seeking summary judgment in its favor with respect to Plaintiff's claims pursuant to the Telephone Consumer Protection Act ("TCPA"), Fair Debt Collection Practices Act ("FDCPA"), and the Illinois Consumer Fraud Deceptive Business Practices Act ("ICFA"). Plaintiff hereby withdraws her TCPA and ICFA claims with prejudice. *See Greater Rockford Energy & Technology Corp. v. Shell Oil Co.,* 790 F.Supp. 804, 820-21 (C.D. Ill. 1992) (dismissing claims withdrawn by plaintiff at summary judgment; treating withdrawal of claims as a motion to dismiss under Fed. R. Civ. P. 41(a)(2)). Moreover, Plaintiff is also withdrawing her FDCPA §§ 1692f and e(11) claims. Accordingly, the

1

only remaining claims at issue are Plaintiff's FDCPA §1692d, d(5), and e(2) claims, which are the heart of Plaintiff's case.

The FDCPA is a consumer protection statute designed to "eliminate abusive debt collection practices by debt collectors." *Suesz v. Med-1 Solutions, LLC,* 757 F.3d 636, 639 (7th Cir. 2014). Congress expressly found that "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 1999 WL 284788, at *3 (N.D. Ill. 1999) *citing* 15 U.S.C. §1692(a). ERC's Motion effectively asks this Court to ignore the legislative history of the FDCPA and grant debt collectors an unrestricted license to abuse non-debtors with impunity. Unfortunately for ERC, the FDCPA is a remedial statute that must be construed liberally to effect its purpose. *Janetos v. Fulton Friedman & Gullace, LLP,* 2013 U.S. Dist. LEXIS 29655, at *13 (N.D. Ill. 2013); *see also Heyer v. Pierce & Assocs., P.C.,* 2017 U.S. Dist. LEXIS 3144, at *37 (N.D. Ill. 2017) (the FDCPA must be broadly construed in order to give full effect to its purposes). As set forth *infra,* the facts in this case demonstrate that ERC's conduct towards Plaintiff is the very conduct that the FDCPA sought to eliminate. Accordingly, ERC's Motion should be denied.

## BACKGROUND

### a. ERC's Misguided Phone Calls to Plaintiff

On December 7, 2016, ERC was retained by its client, AT&T, to service a debt that a third party incurred with AT&T ("subject debt"). (SOF¶6.)[1] Shortly thereafter, ERC conducted a "scrub" in an effort to obtain the third party debtor's information to facilitate the collection of the subject debt. (SOF¶9.) The "scrub" revealed that the number ending 4667 may be associated with the third party debtor. (SOF¶11.) The scrub produced incorrect information as the 4667 number has belonged

---

[1] "SOF" refers to ERC's Rule 56.1 Statement of Facts. [Dkt. 47-5]

to Plaintiff since at least 2015 and was not associated with the third party debtor. (Pl. SOAF¶4.)[2] Due to the inaccurate information produced by the "scrub," from December 8, 2016 through March 7, 2017, ERC placed at least forty-two (42) calls to Plaintiff's cellular telephone number ending in 4667 in an attempt to collect the debt owed by the third party, who Plaintiff has no relationship or association with. (Pl. SOAF¶¶1-4); (SOF¶¶9,11-12.) At the time ERC placed calls to Plaintiff, Plaintiff did not owe any debt to anyone and was not receiving calls from any debt collectors beside ERC. (Pl. SOAF¶5.) Shortly after ERC's calls began, around Christmas time (December 2016), Plaintiff answered a call from ERC and advised ERC that they were calling the wrong person. (Pl. SOAF¶6.) Despite being notified that it was calling the wrong party around Christmas time (December 2016), ERC continued placing calls to Plaintiff's cellular phone, attempting to collect a debt owed by a third party. (Pl. SOAF¶7.)

From December 2016 through March 7, 2017, Plaintiff told ERC that it was calling the wrong party on many occasions (over 20) and asked ERC to stop calling her. (Pl. SOAF¶8.) On many occasions, ERC would hang up after Plaintiff advised ERC that it was calling the wrong person, only to call back at a later time. (Pl. SOAF¶9.) From December 2016 through March 7, 2017, ERC placed 42 calls to Plaintiff's cellular phone, with the vast majority of calls taking place *after* Plaintiff advised ERC that it was calling the wrong party. (Pl. SOAF¶10.) During that time period, ERC placed more than one call per day to Plaintiff's cellular phone on five separate days, including December 16, 2016, January 4, 2017, January 13, 2017, February 10, 2017, and February 13, 2017. (Pl. SOAF¶11.) During one recorded call with ERC, Plaintiff advised ERC that it was calling the wrong party and that ERC continued to call Plaintiff after she requested the calls cease. (Pl. SOAF¶20.) In response, ERC stated that it would be hard for ERC to take Plaintiff off the "do

---

[2] "Pl. SOAF" refers to Plaintiff's Statement of Additional Facts contained in Plaintiff's Response to ERC's Statement of Facts filed concurrently herewith.

3

not call list" because Plaintiff did not have an account with ERC. (*Id.*) ERC did not produce the aforementioned phone recording until Plaintiff's counsel specifically demanded it during ERC's deposition, after discovering that ERC did not produce the highly probative recording. (Pl. SOAF¶21.) The recording was responsive to previous discovery requests issued to ERC on June 16, 2017, and was not produced until June 6, 2018, nearly one year after it was requested. (*Id.*)

    **b.**    **Plaintiff's Damages**

Plaintiff is employed as a divisional supervisor for Hartz Construction Company. (Pl. SOAF¶12.) Plaintiff has been employed by Hartz Construction Company for 20 years. (*Id.*). ERC would place calls to Plaintiff's cellular phone during work hours and even on the weekends. (Pl. SOAF¶ 13.) ERC's phone calls significantly frustrated Plaintiff's ability to perform her tasks at work. (Pl. SOAF¶14.) Plaintiff lost customers due to the stress and distraction caused by ERC's collection calls. (Pl. SOAF¶15.) ERC's continuous phone calls were harassing and caused Plaintiff anxiety, stress, and adversely impacted her sleep. (Pl. SOAF¶16.) The stress and anxiety from ERC's phone calls caused Plaintiff to physically shake. (Pl. SOAF¶17.) Moreover, Plaintiff's family members and other third parties overheard ERC's collection calls to Plaintiff, which resulted in significant embarrassment to Plaintiff as Plaintiff's family members and other third parties were led to believe that Plaintiff is delinquent on her financial obligations. (Pl. SOAF¶18.)

## **LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). The Court must draw all reasonable inferences in favor of the nonmovant. *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). "Summary

judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003).

**ARGUMENT**

ERC contends that it is entitled to summary judgment with respect to Plaintiff's FDCPA claims because (1) ERC "did not intend to call Plaintiff" and (2) ERC did not place any calls to Plaintiff after Plaintiff advised ERC that it was calling the wrong party, and thus its phone calls to Plaintiff were not harassing, oppressive, or abusive as a matter of law. For the reasons set forth below, ERC's argument must fail.

I. **ERC Is Not Entitled to Summary Judgment on Plaintiff's FDCPA Claims**

   a. **Plaintiff's §§1692d and d(5) Claims**

ERC argues that it is entitled to summary judgment on Plaintiff's §§1692d and d(5) claims because (1) ERC "did not intend to call Plaintiff" and (2) ERC did not place any calls to Plaintiff after Plaintiff advised ERC that it was calling the wrong party. ERC is not entitled to summary judgment because (1) a debt collector can violate §§1692d and d(5) despite the fact that it "did not intend to call Plaintiff" and (2) there is a genuine issue of material fact as to whether ERC continued calling Plaintiff after Plaintiff notified ERC that it was calling the wrong party.

   1. **Wrong Party Collection Efforts Can Violate the FDCPA**

ERC argues that it is entitled to summary judgment because it "did not intend to call Plaintiff." Unfortunately for ERC, its argument is refuted by the express language of §1692d and §1692d(5). Specifically, Section 1692d of the FDCPA prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse ***any*** person in connection with the collection of a debt. 15 U.S.C. §1692d. (emphasis added.) Moreover, §1692d(5) prohibits a debt collector from "causing a telephone to ring or engaging ***any*** person in

[a] telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass *any* person at the called number." 15 U.S.C. §1692d(5) (emphasis added). Not surprisingly, the express language of the FDCPA is consistent with one of its legislative purposes; to "eliminate the recurring problem of debt collectors dunning the wrong person." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 251 (S.D. N.Y. 2011) (finding that the legislative history of the FDCPA demonstrates that it was designed to also protect people who do not owe money at all and to curb abusive collection efforts aimed at the wrong person because of mistaken identity or mistaken fact.)

The Seventh Circuit has affirmed that §1692d of the FDCPA protects *any* person mistreated by a debt collector, including wrongly dunned individuals. *Todd v. Collecto, Inc.* 731 F.3d 734, 737 (7th Cir. 2013) (finding that the FDCPA protects wrongly dunned individuals and specifically stressing that §1692d is a protection for *any* person mistreated by a debt collector); s*ee also Hayes v. Receivables Performance Mgmt., LLC,* 2018 U.S. Dist. LEXIS 165084, at *13-15 (N.D. Ill. 2018) (finding collection calls to a wrong party can violate §1692d(5)); *Hatuey v. IC Sys.,* 2018 U.S. Dist. LEXIS 193713, at *11 (D. Mass. 2018) (noting that a debt collector who is notified that it had been calling the wrong party about an otherwise valid debt, but nonetheless fails to stop calling can violate the FDCPA); *McBeth v. Credit Prot. Ass'n, L.P.,* 2015 U.S. Dist. LEXIS 94016, at *15-16 (M.D. Fla. 2015) (denying debtor collector's motion for summary judgment on consumer's §1692d claim; rejecting debt collector's argument that it did not violate §1692d because it did not know it was calling the wrong party). Here, there is no dispute that ERC wrongly dunned Plaintiff by placing at least 42 collection calls in an effort to collect a debt owed by a third party. *See* (Pl. SOAF¶¶1-3, 7-11.) (SOF¶12.) Accordingly, ERC's argument that it is entitled to summary judgment on Plaintiff's §1692d and §1692d(5) claims because "it did not

intend" to dun Plaintiff must fail as a matter of law because §1692d and §1692d(5) provide relief for wrongly dunned individuals.

### 2. There is a Genuine Issue of Material Fact as To Whether ERC's Calls Were Made with An Intent to Annoy, Abuse, or Harass Plaintiff

ERC next contends that it is entitled to summary judgment because "ERC's calls are indicative of ERC's legitimate attempt to reach the third party debtor and not an intent to annoy, harass, or abuse." To support its argument, ERC contends that it ceased placing calls to Plaintiff after Plaintiff requested that the calls cease on March 7, 2018.

Unfortunately for ERC, when Plaintiff requested the calls to cease is a heavily disputed fact that precludes summary judgment in ERC's favor. Specifically, Plaintiff testified that she first informed ERC that it was calling the wrong party in December 2016 and that the vast majority of calls were placed *after* Plaintiff notified ERC that it was calling the wrong party. *See* (Pl. SOAF¶10.) The undisputed evidence establishes that ERC placed dozens of calls to Plaintiff *after* December 2016. *See* (Pl. SOAF¶1); (SOF¶12.) Moreover, Plaintiff testified that she notified ERC it was calling the wrong party at least 20 times. *See* (Pl. SOAF¶8.) Plaintiff's contention that ERC continued calling her after she notified ERC that it was calling the wrong party is corroborated by ERC's own admission that it is hard for ERC to take Plaintiff off the "do not call list" because Plaintiff did not have an account with ERC. *See* (Pl. SOAF¶20.) In light of the evidence presented by Plaintiff and the requirement that the Court must draw all reasonable inferences in favor of Plaintiff, ERC is not entitled to summary judgment as a matter of law because there is a genuine issue of material fact as to when Plaintiff requested that the calls cease. *See* Fed. R. Civ. P 56(c) (summary judgment not appropriate if there is a general issue as to any material fact); *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001) (Court must draw all reasonable inferences in favor of the nonmovant.)

Courts have consistently denied summary judgment in similar circumstances. In *Wright v. Enhanced Recovery Co., LLC,* 227 F.Supp. 3d 1207, 1215 (D. Kan. 2016), a case involving the same defendant and **identical facts**, the court denied summary judgment on the basis that "Enhanced Recovery is doing nothing more than asking the Court to accept its records and reject [the wrongly dunned consumer's] testimony." *Id.*; *see also McBeth,* 2015 U.S. Dist. LEXIS 94016, at *15-16 (denying debt collector's motion for summary judgment on plaintiff's §1692d(5) because debt collector's argument hinges on its self-serving view of the disputed facts). The *Wright* court further held (correctly) that "at the summary judgment stage, the Court's function is not to weigh evidence and determine the truth of the matter, but rather, the Court is tasked only with determining whether there is a triable issue of fact." *Wright,* 227 F.Supp. 3d at 1215.

Importantly, Plaintiff need not prove the intent of ERC, the only question is whether the "natural consequence" of ERC's conduct was to "harass, oppress, or abuse" the Plaintiff. *Swearingen v. Portfolio Recovery Assocs., LLC,* 892 F. Supp. 2d 987, 992 (N.D. Ill. 2012) *citing Horkey v. J.V.D.B. & Assocs.,* 333 F.3d 769, 774 (7th Cir. 2003) (noting that the debt collector's intent is irrelevant under §1692d). Simply put, whether the "natural consequence" of ERC's conduct was to "harass, oppress, or abuse" Plaintiff is a genuine issue of material fact that precludes summary judgment in ERC's favor. Courts in this district have consistently held that whether the natural consequence of a debt collector's conduct was to "harass, oppress, or abuse" is a fact best left to a jury." *Johnson v. Ditech Fin., LLC,* 2017 U.S. Dist. LEXIS 135757, at *4 (N.D. Ill. 2017) (denying debt collector's summary judgment motion on plaintiff's §1692d(5) claim; finding a triable issue of fact); *Majeski v. I.C. Sys., Inc.,* 2010 U.S. Dist. LEXIS 1830, at *2-4 (N.D. Ill. 2010) (denying debt collector's summary judgment motion on plaintiff's §1692d(5) claim), *Swearingen,* 892 F. Supp. 2d at 992 (N.D. Ill. 2012) (declining to enter summary judgment

in favor of debt collector on a §1692d(5) claim where the debt collector called the consumer 22 times in a two-month period); *Hendricks v. CBE Group, Inc.,* 891 F. Supp. 2d 892, 897 (N.D. Ill. 2012) (denying summary judgment on §1692d(5) claim where the debt collector called the debtor 159 times over a two-month period; finding a triable issue of fact). Accordingly, ERC is not entitled to summary judgment in its favor with respect to Plaintiff's §§1692d and d(5) claims because Plaintiff has raised genuine issues of material fact that should be decided by the jury.

### b. Plaintiff's §1692e Claims

The FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation in connection with the collection of a debt, including the false representation of the character, amount, or legal status of a debt. 15 U.S.C. §§1692e and e(2)(A). ERC argues that it is entitled to summary judgment with respect to Plaintiff's §1692e(2) claim because "the undisputed evidence demonstrates that ERC did not attempt to collect a debt from Plaintiff." Unfortunately for ERC, the FDCPA permits "***any*** aggrieved party [to] bring an action under §1692e." *Wright v. Finance Serv.,* 22 F.3d 647, 649-50 (6th Cir. 1994) (finding that absent a limitation in the substantive provisions, the remedy section of the FDCPA expressly allows any aggrieved party to bring an action under §1692e). Courts have consistently held that an attempt to collect a debt from a non-debtor constitutes a "false representation" as to the character or status of the debt in violation of 1692e. *Stuart v. AR Res., Inc.*, 2011 U.S. Dist. LEXIS 27025, at *10-12 & n.2 (E.D. Pa. 2011); *see also Owens v. Howe*, 2004 U.S. Dist. LEXIS 22728, at *34-35 (N.D. Ind. 2004) ("merely dunning a person who is not legally obligated to pay the debt makes the debt collector liable under [15 U.S.C. § 1692e(2)(A)] as a matter of law because it is, ipso facto, a false representation about the status or character of the debt."); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991) ("debt collectors may be found in violation of subsection 1692e(2)(A) for mistakenly

9

dunning the wrong individuals when they fail to exercise reasonable care in ascertaining the facts, such as by relying upon information on which a reasonable person would not have relied."); *Velazquez v. NCO Fin. Sys., Inc.*, 2011 U.S. Dist. LEXIS 57896, at *17 (E.D. Pa. 2011) ("demanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a matter of law."); *Valdez v. Capital Mgmt. Servs., LP*, 2010 U.S. Dist. LEXIS 121483, at *38 (S.D. Tex. 2010) ("Several district courts have held that attempting to collect a debt from a person whom the debt collector knows does not owe the debt misrepresents the 'character' or 'legal status' of the debt and is actionable under 15 U.S.C. § 1692e(2)(A). [Plaintiff] has alleged that [defendant] continued to attempt to collect the debt . . . despite knowing that [plaintiff] did not incur or owe the debt. This action would, if true, misrepresent the 'character' or 'legal status' of the debt.")(citations omitted).

Here, as stated in detail *supra,* it is undisputed that ERC mistakenly dunned Plaintiff. By doing so, ERC falsely represented the character or status of the debt as it is undeniable that Plaintiff did not owe any debt to ERC or ERC's client, AT&T. *See* (Pl. SOAF¶¶1-3, 7-11.) (SOF¶12.) Accordingly, Plaintiff became an aggrieved party that can maintain an action against ERC under §1692e. Moreover, the Seventh Circuit has held that a violation of §1692e(2) leads to liability even when, as in this case, the false representation is unintentional. *Turner v. J.V.D.B. Assocs.,* 330 F.3d 991, 995 (7th Cir. 2003) (reversing summary judgment in favor of debt collector; finding debt collector's knowledge of the false representation is irrelevant). As a result, ERC is not entitled to summary judgment on Plaintiff's §1692e claim.

## **CONCLUSION**

ERC's Motion blatantly ignores the evidence in this case and the legal standard for summary judgment. Plaintiff has produced sufficient evidence in which a reasonable jury could return a verdict in her favor. Accordingly, ERC is not entitled to summary judgment as a matter of law.

Dated: November 28, 2018                                   Respectfully Submitted,

/s/ Mohammed O. Badwan
Mohammed O. Badwan
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone: (630)575-8180
Fax: (630)575-8188
mbadwan@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

I, Mohammed O. Badwan, an attorney, certify that on November 28, 2018, I caused the foregoing to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

/s/ Mohammed O. Badwan