IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAMAR KAYYAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17 CV 2718 |
| ) | |
| ENHANCED RECOVERY ) | Judge John J. Tharp, Jr. |
| COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Samar Kayyal asserts that the defendant, Enhanced Recovery Company ("ERC"), violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by repeatedly calling her in an attempt to collect a debt. It is undisputed that Kayyal did not owe the debt; the dispute centers around whether ERC's calls—some 40 calls over a three-month period—violated the FDCPA's prohibitions on harassing or deceptive conduct. ERC says it did not and has filed a motion for summary judgment. There are material fact disputes relevant to these questions that require a jury's resolution, however, so ERC's motion for summary judgment is denied.

**BACKGROUND[1]**

ERC is a debt collector; it services debts on behalf of its clients. In December 2016, ERC was retained by AT&T to service a debt that a third party (unidentified in the record) had incurred to AT&T. ERC was provided with information such as the name of the debtor and the amount of the debt owed. Through one of its vendors, a company named TLO, ERC conducted a telephone

---

[1] Except as indicated, the facts are undisputed. Where there is a dispute, however, the Court is required to credit Kayyal's version, as she is the non-movant.

number "scrub," which is a process by which it attempts to find telephone numbers associated with a particular person. According to ERC, the "scrub" results revealed that there was a "high probability" that a particular telephone number was associated with the debtor. *Id.* ¶ 11. Notwithstanding this optimistic assessment, however, the number belonged not to the debtor but to Kayyal.

From sometime in December 2016 through March 7, 2017, ERC made approximately forty calls to Kayyal's cell phone in an effort to contact the debtor.[2] During this period, ERC generally made no more than one call in a day, but on four or possibly five days, it called Kayyal's number twice. Kayyal sometimes answered the calls; on at least some occasions the caller referred to ERC and Kayyal told the caller to stop calling and/or that they had the wrong number. On other occasions, Kayyal simply hung up. When Kayyal did not answer, ERC left no voice mail message. Kayyal learned that the calls were from a debt collector by Googling ERC's name. No one calling from ERC, however, told her that she owed a debt until the final call she received.

That call was made on March 7, 2017. On that date, an ERC employee, Christine Wilcox, asked to speak with the debtor. Kayyal, who picked up the phone, asked why she was being called; the caller told her that she owed a debt. Kayyal told ERC to "stop calling" and to "take me off your phone list." She also said that she was going to call her attorneys. ERC did not place any further calls to Kayyal's telephone number after that occasion. This was the only call in which Kayyal had any conversation with someone calling on ERC's behalf. As to all of the other calls Kayyal received, either she or the caller hung up after Kayyal answered and told the caller to "stop calling"

---

[2] The parties dispute the exact number of calls: ERC says it was forty, while Kayyal contends that it was at least forty-two. The difference is not material.

or that they were calling the wrong number. Kayyal contends that she informed ERC at least 20 times that ERC had the wrong number and asked ERC to stop calling her.

Based on ERC's repeated calls, Kayyal filed this suit in April 2017, alleging violations of the FDCPA and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. ERC has moved for summary judgment.

## DISCUSSION

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court "construe[s] all facts in the light most favorable to . . . the nonmoving party, who must point to specific facts showing that there is a genuine issue for trial, and inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago Sch. of Prof. Psych.*, 893 F.3d 1000, 1006 (7th Cir. 2018) (internal quotations omitted).

**I.     Plaintiff's Withdrawal of Certain Legal Theories**

In her complaint, Kayyal invoked a range of legal theories, contending that she was entitled to relief under the TCPA, the ICFA, and various provisions of the FDCPA. In response to ERC's motion for summary judgment, Kayyal purports to withdraw several "claims," but what she is really doing is abandoning legal theories rather than dismissing claims. The complaint in this case asserts only one claim for relief, that arising from the series of phone calls made to her by ERC, but it also asserts multiple legal theories as to why the facts of her claim entitle her to relief from ECR. But asserting multiple legal theories does not proliferate the number of claims a complaint

sets forth. A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts. One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012); *see also NAACP v. Am. Family Mut. Ins. Co.,* 978 F.2d 287, 292 (7th Cir.1992) ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

With that understanding, I construe Kayyal's withdrawal of claims as a waiver of any right to legal relief premised on violations of the TCPA, the ICFA, or §§ 1692f and 1692e(11) of the FDCPA. In that regard, it is immaterial whether the theories are expressly withdrawn "with prejudice" or without; Kayyal has made no argument that any of these legal theories entitle her to relief, and so has surrendered any claim for relief predicated on these theories in the context of this case or any other. The only legal theories that Kayyal is continuing to advance are those under 15 U.S.C. § 1692d and § 1692e, both of which are part of the FDCPA, and it is to those theories that I now turn.

## II. The Remaining FDCPA Theories

### A. Claims under FDCPA §§ 1692d and 1692d(5)

Distilled to its essence, the parties disagree about whether ERC called Kayyal after being told it had the wrong number and to stop calling, violating FDCPA §§ 1692d and 1692d(5). Section 1692d states "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Among the specific examples of prohibited conduct set forth in the statute is "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). When assessing whether a defendant's phone calls were harassing under § 1692d(5), "there are two types of evidence . . . . First, where a plaintiff has shown that he asked the collection agency to stop calling . . . and the

4

collection agency nevertheless continued to call the plaintiff . . . . Second, the volume and pattern of the calls may themselves evidence an intent to harass." *Kube v. Creditors Collection Bureau, Inc.*, No. 10 C 7416, 2012 WL 3848300, at *2 (N.D. Ill. Aug. 30, 2012).

Kayyal contends that she told ERC "over 20" times, beginning in December 2016, that it had the wrong number and to stop calling her. PSOAF ¶ 8. ERC maintains that the first and only time they were told to stop calling was on March 7, 2017. Def.'s Response to PSOAF ¶ 8. This dispute presents a credibility determination that a jury, not this Court, must resolve. ERC's argument that there is no dispute about when Kayyal told ERC to stop calling is based on an untenable reading of Kayyal's deposition testimony. While Kayyal conceded that the March 7 call was the first and only call during which she had a conversation with anyone calling from ERC, it is clear from the balance of her testimony that she means that was the only call in which there was any significant, two-way, dialog with the caller. Kayyal's testimony is unequivocal that she told the ERC caller(s) many times before that date (and as early as the first call that she received in December) that they should stop calling her and/or that they had the wrong number, and that either she or the caller hung up without a response from the caller. See Ex. C, Pl's Resp. to Def's Statement of Facts, Kayyal Dep. Tr. at 21:1-8; 22:15-20; 24:5-9; 30:16 – 31:13; 31:14 – 32:7; 32:15-21.

Recognizing the problem, ERC also argues that "[a]lthough Plaintiff alleges that she told ERC that it was calling the wrong number on many occasions, Plaintiff cannot point to a specific time or date of any of the alleged calls," and that "[t]he only "evidence" cited by Plaintiff are Plaintiff's unsubstantiated, and contradictory "estimates" offered in her deposition." Def.'s Reply in Supp. of Summ. J. at 6 (quotations in original).

That is true but of no import. The Seventh Circuit has repeatedly stated that self-serving testimony by the plaintiff is enough to create a genuine dispute of a material fact and that it is best left to the jury to determine the credibility of the testimony. *See Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) ("'uncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts.'") (quoting *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *see also Brown v. I.C. Sys., Inc.*, No. 16 C 9784, 2019 WL 1281972 (N.D. Ill. Mar. 20, 2019) ("[t]he fact that plaintiff's claims rely on self-serving deposition testimony is no defect at the summary judgment stage") (internal quotations omitted). Further, when deciding whether to grant summary judgment, the Court can only make determinations on matters of law, not determinations of witness credibility. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) ("district courts presiding over summary judgment may not weigh conflicting evidence . . . or make credibility determinations . . . both of which are the province of the jury.") (internal citations and quotations omitted).

There are other material fact disputes a jury must resolve as well. The parties' phone records, for example, do not agree as to the number and dates of calls from ERC to Kayyal. The frequency, timing, and pattern of the calls is material to a determination of whether the calls were harassing or otherwise violative of § 1692d, and therefore presents another question that a jury could reasonably resolve in Kayyal's favor. *See, e.g., Losch v. Advanced Call Ctr. Techs., LLC*, No. 15 C 6644, 2017 WL 1344524, at *3 (N.D. Ill. Apr. 12, 2017) ("As a general rule, whether the volume and pattern of a debt collector's calls violates the FDCPA is a jury question."). In addition, were a jury to conclude that ERC's records are no more accurate than Kayyal's memory and records, they would also be entitled to question the credibility of ERC's claim that it stopped calling

6

Kayyal the first time she asked them to do so. *See, e.g., Brown*, 2019 WL 1281972, at *8 (finding a jury could determine the defendant may have made other mistakes after the initial phone records produced were inaccurate).

In *Brown*, the court found that the parties' dispute over whether the plaintiff told the defendant to stop calling and the number of times that she was called was "material because twenty calls over two months are not so few and far between that they cannot constitute a violation of § 1692(d)(5) . . . ." 2019 WL 1281972, at *9. Specifically, the Court stated that if the plaintiff "told defendant that she was not the person defendant was trying to reach and that defendant should stop calling, [a jury] could interpret twenty calls . . . as evidence . . . of an intent to annoy or harass." *Id.* See also *Decker v. Receivables Performance Management, LLC*, No. 17 CV 4152, 2019 WL 1112256, at *12 (N.D. Ill. Mar. 11, 2019) (finding a jury could conclude the plaintiff asked the defendants to stopped calling but continued to call resulting in a violation of § 1692d(5)).

The same is true here. A jury is entitled to credit Kayyal's version of events, and if they do, they could reach the conclusion that the calls were made with an intent to cause harassment or abuse resulting in a violation of § 1692d(5). Accordingly, ERC's motion for summary judgment as to 15 U.S.C. §§ 1692d is denied.

**B.     Claim under FDCPA § 1692e(2)**

FDCPA § 1692e states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," while subsection (2) states that the following conduct violates § 1692e: "[t]he false representation of — (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."

Kayyal has not explicitly invoked subsection (A) of § 1692e(2), but the language in the complaint aligns with the language in that section rather than subsection (B). Compl. ¶ 52

7

("Defendant violated §1692e(2) when it falsely misrepresented the character, amount, or legal status of the alleged debt."). The Seventh Circuit has stated that the "test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *see also Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) ("[t]he unsophisticated consumer is 'uninformed, naive, [and] trusting,' but possesses 'rudimentary knowledge about the financial world, . . . possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences.'") (alteration in original) (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). For summary judgment to be appropriate, the inquiry is thus: Has Kayyal pointed to a genuine dispute of material fact about whether ERC falsely represented the character, amount, or legal status of a debt that would deceive or mislead an unsophisticated, but reasonable, consumer?

In her response to the motion for summary judgment, Kayyal cites numerous cases where an attempt to collect a debt from a non-debtor constituted a false representation in violation of § 1692e. ERC maintains that the cases are distinguishable because they involved conduct by debt collectors involving affirmative misrepresentations about a debt owed by the putative debtor, such as sending misleading letters, telling the non-debtor they owe the debt, and trying to persuade the non-debtor they owe a family member's debt. *See, e.g.*, *Velazquez v. NCO Fin. Sys., Inc.*, No. 2:11–CV–00263, 2011 WL 2135633 (E.D. Pa. May 31, 2011) (finding plaintiff's allegation that defendant addressed and sent a debt collection letter to her stated a claim upon which relief may be granted under § 1692e). But there is no requirement to show an affirmative misrepresentation to establish liability under § 1692e; that provision seeks to protect consumers against conduct that

8

falls short of an affirmative misstatement; it also applies, expressly, to conduct that is misleading or deceptive for any reason.

ERC argues that Kayyal has not pointed to anything indicating a "genuine issue for trial" as to how ERC attempted to deceive or mislead her into believing she owed the debt apart from stating "ERC continued placing calls . . . attempting to collect a debt owed to a third-party." PSOAF ¶ 7. This ignores Kayyal's testimony that during the March 7, 2017 call, ERC's representative told her that she owed a debt. Ex. C, Pl's Resp. at 26:5-8. But even putting that aside, "merely dunning a person who is not legally obligated to pay the debt" constitutes a false, misleading, or deceptive representation about the character and status of the debt. *Owens v. Howe*, No. 1:04-CV-152, 2004 WL 6070565, *11 (Nov. 8, 2004). "District courts have found that an attempt to collect a debt from a non-debtor constitutes a false representation as to the character or status of the debt in violation of 1692e." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (collecting cases). The plain import of ERC's continuing calls over a span of three months was that Kayyal owed a debt; the Court cannot say that a jury would be unreasonable in concluding that an unsophisticated consumer could construe a series of 40-plus phone calls from a debt collector as an assertion that the consumer owed a debt.[3] It is true enough that Kayyal concedes that she only learned of ERC's status as a debt collector by Googling its name after she began receiving calls, but that minimal inquiry is not beyond the ken of an unsophisticated

---

[3] It is undisputed that Kayyal was not misled or deceived by ERC's calls; there is no evidence that she ever believed that she owed any consumer debt. But Kayyal's subjective understanding is irrelevant. The applicable standard is not subjective—whether the consumer actually believed that the caller was asserting that a debt was owed—but objective: whether an unsophisticated consumer would be misled or deceived into thinking that she owed a debt. I therefore respectfully part company with Judge Dow's ruling in *Hayes v. Receivables Performance Management, LLC*, No. 17-cv-1239, 2018 WL 4616309, at *6 (N.D. Ill. Sept. 26, 2018), which was premised on a lack of evidence that the plaintiff was actually mislead into believing that he owed a debt.

consumer; it would not be unreasonable for a jury to conclude that even an unsophisticated consumer, receiving a barrage of calls from the same company, would make some attempt to discern the caller's identity. Whether ERC made an affirmative representation that it was seeking to collect a debt from Kayyal, an unsophisticated consumer may well have come to that conclusion. And that is enough to create an issue of fact that a jury must resolve.

Accordingly, ERC's motion for summary judgment as to 15 U.S.C. § 1692e(2) is also denied.

\* \* \*

For the reasons set forth above, ERC's motion for summary judgment is denied.

Dated: September 23, 2019

John J. Tharp, Jr.
United States District Judge